IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PEARLETTE TOUSSANT,                    :    CIVIL ACTION
                                       :    No. 14-4266
        Plaintiff,                     :
                                       :
    v.                                 :
                                       :
DR. PATRICIA DAY WILLIAMS,             :
                                       :
        Defendant.                     :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                        November 25, 2014


        The many claims comprising this action arise out of a
relationship between Pearlette Toussant ("Plaintiff") and Dr.
Patricia Day Williams ("Defendant") that ran from 2011 until
2014. During that time, Defendant taught group retreat sessions
attended by Plaintiff, charged Plaintiff for vocational
coaching, allegedly diagnosed Plaintiff with bipolar disorder,
and developed a kind of personal/therapist relationship with
Plaintiff. Before the Court is Defendant's Motion to Dismiss for
Lack of Personal Jurisdiction, which Plaintiff opposes. For the
reasons stated below, the Court will deny the motion.

I.   **BACKGROUND**

   A.   Facts[1]

        Plaintiff, an African-American female residing in
Philadelphia, met Defendant, a white female, in 2011 at a two-
day Chakra workshop led by Defendant, who allegedly then and at
later times held herself out as a licensed physician. First
Amended Complaint ("FAC") ¶¶ 10, 17. The two struck up an email
dialogue wherein Defendant solicited Plaintiff to attend the
Ohio-based Hope Springs Institute for a retreat Defendant led.
Id. ¶¶ 11-12. Defendant also sent brochures advertising the
retreat and other events. Id. ¶ 13. Plaintiff agreed to attend
the April 2013 retreat and five others over three years, at a
cost of $1,500 per session. Id. ¶¶ 15-16, 18. While there, she
allegedly suffered race-based harassment. Id. ¶ 19. Receiving
assurances from Defendant that this would not continue, the two
continued their correspondence. Id. ¶¶ 19, 23. In May 2013,
Defendant allegedly diagnosed Plaintiff with bipolar disorder
over email and recommended she begin lithium treatment--a
suggestion that greatly distressed Plaintiff, even after
Defendant retracted the diagnosis. Id. ¶¶ 25-31.

        Subsequently, Plaintiff agreed to pay Defendant $160
per hour in order to receive vocational/life coaching, an

_____

[1]        The facts below are taken from the First Amended
Complaint and viewed in the light most favorable to Plaintiff.
See infra subsection II.A (standard of review).

arrangement which continued into the fall of 2013. Id. ¶¶ 32-33. The coaching sessions were conducted primarily over the phone, although one occurred in Washington, D.C. Id. at ¶¶ 33, 35; Def.'s Aff., Def.'s Br. Ex. 3, ¶ 18. During this time, Defendant allegedly behaved inappropriately toward Plaintiff by sending intimate emails and, at a Washington, D.C., lunch/coaching session, staring at Plaintiff's breasts. Id. ¶¶ 33-40. At some later point, Defendant allegedly breached the coaching agreement by refused to assist Plaintiff with a job transition. Id. ¶¶ 60-61. In addition, Defendant allegedly later admitted to breaching Plaintiff's confidence by sharing their significant conversations with an outside party. Id. ¶ 67.

In October 2013, Plaintiff returned to Ohio for another retreat session. Id. ¶ 41. There, she allegedly suffered racial antagonism at the hands of the group and unwanted touching and harassment by Defendant. Id. ¶¶ 41-53. In January 2014, Defendant sent Plaintiff a letter partially refunding her retreat tuition balance and terminating their agreement. Id. ¶¶ 62-65, 80. Upon receiving the letter, Plaintiff became very upset, allegedly sustaining emotional, psychological, and physical injuries. Id. ¶¶ 65-66.

On the basis of her allegations, Plaintiff brings the following twelve claims: Breach of Contract (retreat sessions) (Count I); Breach of Contract (coaching) (Count II);

3

Fraud/Fraudulent Inducement (Count III); Negligence--Sexual
Exploitation (Count IV); Negligence--HIPAA (Count V);
Intentional Infliction of Emotional Distress ("IIED") (Count
VI); Assault (Count VII); Battery (Count VIII); Unjust
Enrichment (Count IX); Negligence--Unlicensed Practice of
Medicine/Therapy (Count X); Negligence--Medical Malpractice
(Count XI); Violation of Pennsylvania's Unfair Trade Practices
and Consumer Protection Act ("UTPCPA") (Count XII). Plaintiff
requests appropriate monetary damages related to the above
claims, attorneys' fees, and punitive damages.

### B.   Procedural History

On July 15, 2014, the Complaint was removed from the
Court of Common Pleas, Philadelphia County. ECF No. 1. On July
22, 2014, Defendant timely filed a Motion to Dismiss. ECF No. 2.
On July 31, 2014, Plaintiff filed a Motion to Remand. ECF No. 4.
Plaintiff then filed the First Amended Complaint on August 6,
2014. ECF No. 7. The Court issued an order on August 14, 2014,
denying the Motion to Dismiss as moot. ECF No. 8. On August 18,
2014, Plaintiff filed a Motion for Leave to File a Second
Amended Complaint. ECF No. 10. The Court held a hearing on
August 18, 2014, wherein it denied the Motion for Leave to File
a Second Amended Complaint and took the Motion to Remand under
advisement for 30 days. ECF Nos. 13-14. This time period was

given in hopes that the parties would stipulate to an amount in controversy less than $75,000 and, thus, to remand to state court.

Per Plaintiff's counsel's letter to the Court on September 30, 2014 (not docketed), the parties advised that they were not able to reach an agreement on the stipulation. Thereafter, on the same day, Plaintiff filed a second Motion for Leave to File a Second Amended Complaint (ECF No. 18), in which she deleted all claims for treble damages, punitive damages, and attorneys' fees, and reduced the damages requested to a maximum of $50,000. The Court denied this motion on October 23, 2014. ECF No. 22.

On August 26, 2014, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction. ECF No. 15. Plaintiff filed her response brief on September 9, 2014 (ECF No. 16), and, on September 30, 2014, Defendant filed a Motion for Leave to File a Surreply (ECF No. 19), to which she attached her reply brief. The Motion to Dismiss is ripe for disposition.

## II.  DISCUSSION

### A.   Standard of Review

In order to prevail on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2),[2] a plaintiff asserting jurisdiction bears the burden of establishing the court's personal jurisdiction over the defendant. Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 97 (3d Cir. 2004). A court has "considerable procedural leeway in choosing a methodology for deciding [a 12(b)(2)] motion." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1351 (3d ed. 2004). When, as here, the court "does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." Miller Yacht Sales, Inc., 384 F.3d at 97; see also Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 331, 337 (3d Cir. 2009) (holding that plaintiffs had met their burden to establish a prima facie case, after assuming the truth of plaintiffs' affidavits and construing factual disputes

---

[2]      Defendant's motion is titled "Defendant Dr. Patricia Williams' Motion to Dismiss for Lack of Personal Jurisdiction Pursuant to Rule 12(b)(6) and 4(e)." Def.'s Mot. Dismiss 1. As Defendant focuses on the personal jurisdiction issue and not on a 12(b)(6) failure to state a claim, the Court, therefore, will analyze the motion under Rule 12(b)(2) and not Rule 12(b)(6).

in plaintiffs' favor).[3] Furthermore, "a court must analyze
questions of personal jurisdiction on a defendant-specific and
claim-specific basis." Miller Yacht Sales, Inc., 384 F.3d at 95
n.1 (citing Calder v. Jones, 465 U.S. 783, 790 (1984)).

   B.   Legal Standard

        A district court "exercises personal jurisdiction
according to the law of the state where it sits." O'Connor v.
Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007) (citing
Fed. R. Civ. P. 4(k)). Because the Court is located in
Pennsylvania, it applies the Pennsylvania long-arm statute,
which provides for jurisdiction "to the fullest extent allowed
under the Constitution of the United States and [which] may be
based on the most minimum contact with this Commonwealth allowed
under the Constitution of the United States." 42 Pa. Const.
Stat. Ann. § 5322(b).

        Personal jurisdiction may be either general or
specific. O'Connor, 496 F.3d at 317 (citing Helicopteros
Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & n.9

---

[3]        Although the Court, at this stage of the proceedings,
determines the existence of personal jurisdiction based on
Plaintiff's prima facie case, the Court may revisit the
jurisdictional question upon request, if warranted by the facts
developed during discovery. Metcalfe, 566 F.3d at 336; see also
Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d
Cir. 1992) ("Of course, by accepting a plaintiff's facts as true
when a motion to dismiss is originally made, a court is not
precluded from revisiting the issue if it appears that the facts
alleged to support jurisdiction are in dispute.").

(1984)). General jurisdiction, if established, exists even "when the claim does not arise out of or is unrelated to the defendant's contacts with the forum." Dollar Sav. Bank v. First Sec. Bank of Utah, N.A., 746 F.2d 208, 211 (3d Cir. 1984). "General jurisdiction depends on a defendant having maintained 'continuous and systematic' contacts with the forum state," D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 107 (3d Cir. 2009) (citing Helicopteros, 466 U.S. at 415-46). In order to justify an exercise of general jurisdiction, "the plaintiff must show significantly more than mere minimum contacts"; rather, "the nonresident's contacts to the forum must be continuous and substantial." Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434, 437 (3d Cir. 1987).[4]

Specific jurisdiction, on the other hand, requires the plaintiff to show "that the particular cause of action sued upon

---

[4]     Recent Supreme Court jurisprudence has greatly restricted the relevance of general jurisdiction as an independent basis for asserting jurisdiction. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011) (limiting the application of general jurisdiction to a forum where the out-of-state corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State"); Daimler AG v. Bauman, 134 S. Ct. 746, 758 n.11 (2014) (noting that "general jurisdiction requires affiliations . . . comparable to a domestic enterprise in that State"); see also id. at 758 ("As this Court has increasingly trained on . . . specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme.").

arose from the defendant's activities within the forum state."
Id. Building on Supreme Court jurisprudence, the Third Circuit
has defined a three-step analysis for determining whether the
exercise of specific jurisdiction is appropriate. "First, the
defendant must have 'purposefully directed [its] activities' at
the forum." O'Connor, 496 F.3d at 317 (quoting Burger King Corp.
v. Rudzewicz, 471 U.S. 462, 472 (1985)). "Second, the litigation
must 'arise out of or relate to' at least one of those
activities.'" Id. (citing Helicopteros, 466 U.S. at 414). Third,
the court considers "whether the exercise of jurisdiction
otherwise 'comport[s] with "fair play and substantial
justice."'" Id. (quoting Burger King, 471 U.S. at 476
(alteration in original)).[5] Furthermore, "a defendant
purposefully directs his activities at the forum state when he
'avails [himself] of the privilege of conducting activities
within the forum State, thus invoking the benefits and
protections of its laws.'" Doe v. Hesketh, 15 F. Supp. 3d 586,
593 (E.D. Pa. 2014) (quoting Hanson v. Denckla, 357 U.S. 235,
253 (1958) (alteration in original)). The rationale for
exercising specific jurisdiction is that a defendant accepts the

---

[5]         For brevity's sake, the Court will refer to these
steps as minimum (or purposeful) contacts, relatedness, and fair
play.

cost of personal jurisdiction in a particular forum when he or
she receives the benefits of acting within that forum.

   C.   Analysis

      1.   General Jurisdiction[6]

      Defendant argues that general jurisdiction would be
inappropriate in Pennsylvania because most of the alleged
conduct occurred in Ohio or Washington, D.C., Defendant does not
regularly do business in Pennsylvania, and she has no offices or
property and is not licensed here. Def.'s Br. 11-12. In
response, Plaintiff points to Defendant's online curriculum
vitae, which shows her to be an assistant professor at the
Thomas Jefferson Medical College in Philadelphia, Pennsylvania.
Pl.'s Br. 2-5 & Ex. 1-3. Defendant replies that this designation
is merely an academic credential and that she has taught no
courses in Pennsylvania and received no salary from Jefferson.
Def.'s Reply Br. 5.

      Defendant has the better argument here. Because she
does not reside in Pennsylvania, has no property here, is not
licensed here, and her professorship at an in-state medical

---

[6]      As noted previously, the Supreme Court has limited the
relevance of general jurisdiction. Goodyear Dunlop Tires
Operations, S.A., 131 S. Ct. at 2851; Daimler AG, 134 S. Ct. at
758. Although the Court evaluates the parties' arguments with
respect to general jurisdiction--and finds that it is lacking--
this is largely a moot point where, as shown below, the Court
may properly exercise specific jurisdiction.

school appears to be honorary, she does not satisfy the "continuous and systematic" contacts needed for the Court to exercise general jurisdiction over her. Helicopteros, 466 U.S. at 415-16. Therefore, the Court may not exercise general jurisdiction over Defendant.

### 2.   Specific Jurisdiction

Due to the numerous claims at issue, the Court will consider them in two groups: contract claims and tort claims.

### a.   Contract Claims

In applying the specific jurisdiction analysis, the Third Circuit "consider[s] not only the contract but also 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" Vetrotex Certainteed Corp. v. Cons. Fiber Glass Prods. Co., 75 F.3d 147, 151 (3d Cir. 1996) (citing Burger King, 471 U.S. at 479).

Plaintiff has three contract-related claims: (1) breach of three-year retreat contract (Count I); (2) breach of coaching contract (Count II); and (3) unjust enrichment (Count IX). FAC ¶¶ 74-88, 124-28.

Regarding the retreat contract, Defendant argues that there is no signed contract, Def.'s Br. 14, the agreement was entered into with "Hope Springs Institute (a non-profit Ohio

entity),” id., the services were to be rendered in Ohio, not
Pennsylvania, id. at 14-15, and Plaintiff made payments to Hope
Springs, not Defendant, id. at 15. Plaintiff responds that
Defendant targeted her and two other Pennsylvania residents via
email solicitations, Pl.'s Br. 5; Pl.'s Decl. ¶ 2, ECF No. 16,
called her regarding the retreat, FAC ¶ 16, and sent her the
termination letter, which included a refund from Defendant's
personal checking account, FAC Ex. R. Under Pennsylvania law, a
contract may be formed by mutual assent and consideration, even
if it is not formalized in writing. Courier Times, Inc. v.
United Feature Syndicate, Inc., 445 A.2d 1288, 1295 (Pa. Super.
Ct. 1982). Although there was no signed contract here, there was
clearly an agreement in which Defendant would provide services
and Plaintiff would pay for them. In addition, Defendant emailed
and called Plaintiff, who was located in Pennsylvania, in an
attempt to persuade her to join the group sessions. Clearly,
Defendant targeted Pennsylvania and purposefully availed herself
of the privilege of doing business here. Hanson, 357 U.S. at
253; see also, e.g., O'Connor, 496 F.3d at 318 (finding that
defendant purposefully contacted a forum where it mailed
seasonal newsletters and a brochure and called plaintiffs in
order to form an agreement); Grand Entm't Grp., Ltd. v. Star
Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) ("Mail and
telephone communications sent by the defendant into the forum

may count toward minimum contacts that support jurisdiction."); Phoenicia Sports & Entm't, LLC v. N.Y. Cosmos, LLC, No. 12-0772, 2012 WL 3155526, at *5 (E.D. Pa. Aug. 2, 2012) (finding minimum contacts where defendant "participated in numerous negotiations by telephone and email" with plaintiff, leading to the agreement at issue). Moreover, where the agreed-to services would be performed does not alter this analysis. See O'Connor, 496 F.3d at 316, 325 (finding specific jurisdiction where the services at issue were performed outside the forum). Finally, it appears that Defendant refunded the tuition money from her personal bank account, which undercuts her claim that the contract was between Plaintiff and Hope Springs. For these reasons, the Court finds that, for the breach of contract claim related to the retreat (Count I), Plaintiff purposefully contacted the forum and the claim arises out of or relates to the contact.[7]

For the coaching contract, Defendant contends that Plaintiff requested the services, Def.'s Br. 7, no services took place in person in Pennsylvania, id. at 8, Defendant did not know where Plaintiff was when they spoke over the phone, id., and there was no written contract, id. at 7. Plaintiff points out that they had numerous phone discussions while she was in

---

[7]    Both contract claims satisfy the second step of the specific jurisdiction analysis (that is, whether they arise out of or relate to the minimum contacts) because they are substantively relevant to the minimum contacts. O'Connor, 496 F.3d at 320.

Pennsylvania, FAC ¶ 33, and Defendant often opened their conversations by asking where Plaintiff was, Pl.'s Decl. ¶ 3. For the reasons noted above in the discussion of the retreat contract, Defendant availed herself of the privilege of doing business in Pennsylvania. Taking Plaintiff's allegations as true and drawing factual disputes in Plaintiff's favor, <u>Miller Yacht Sales, Inc.</u>, 384 F.3d at 97, the Court finds that, for the coaching breach of contract claim (Count II), Plaintiff purposefully contacted the forum and the claim arises out of or relates to the contact.

Finally, the Court also finds that, for the related unjust enrichment claim (Count IX), Plaintiff purposefully contacted the forum and the claim arises out of or relates to the contact.

### b.   <u>Tort Claims</u>

Plaintiff brings nine tort claims: (1) Fraud/Fraudulent Inducement to enter contracts (Count III); (2) Negligence--Sexual Exploitation (Count IV); (3) Negligence--HIPAA (Count V); (4) IIED (Count VI); (5) Assault (Count VII); (6) Battery (Count VIII); (7) Negligence--Unlicensed Practice of Medicine/Therapy (Count X); (8) Negligence--Medical Malpractice (Count XI); and (9) Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Act (Count XII).

In general, Defendant argues that "virtually all of the [tort] allegations relate to alleged conduct in Ohio," and thus there is no basis for specific jurisdiction over these claims. Def.'s Br. 15-16. Plaintiff maintains that her injuries relate directly to the contracts she had entered with Defendant and that these injuries would not have occurred but for the two women's contractual relationship. Pl.'s Br. 8-9. In her reply, Defendant makes the additional argument that because Plaintiff entered the retreat contract with Hope Springs and not Defendant, Defendant's alleged tortious conduct is not related to any minimum contacts with Pennsylvania. Def.'s Reply Br. 7.

First, the medical claims (Counts X and XI) do not seem related to either the retreat contract (which concerned group sessions in Ohio) or the coaching contract (which concerned life and/or professional development). Accordingly, the Court cannot here rely on Defendant's minimum contacts with respect to those contracts; the medical claims must on their own support specific jurisdiction. Because Defendant allegedly emailed a faulty diagnosis to Plaintiff, whom she knew to be in Pennsylvania, FAC ¶¶ 25-28 & Ex. J, she purposefully availed herself of the Pennsylvania forum.[8] See Hanson, 357 U.S. at 253; O'Connor, 496 F.3d at 318; Grand Entm't Grp., 988 F.2d at 482;

---

[8]     It is evident as well that the claims arose out of or were related to Defendant's purposeful contacts.

see also, e.g., O'Connor v. Fischbein, No. 09-4931, 2010 WL
1053220, at *4 (E.D. Pa. Mar. 16, 2010) (finding sufficient
minimum contacts where defendant directed five letters and one
phone call to the forum, all of which "directly related to the
subject of th[e] litigation"). In addition, the harm occurred in
Pennsylvania when Plaintiff read the email. See Pa. Const. Stat.
Ann. § 5322(a)(4) (allowing the exercise of personal
jurisdiction over a person who "caus[es] harm or tortious injury
in this Commonwealth by an act or omission outside this
Commonwealth").[9] The Court finds that, for these claims,
Plaintiff purposefully contacted the forum and the claims arise
out of or relate to the contact.

Second, the fraud/fraudulent inducement (Count III)
and UTPCPA violation (Count XII) claims do appear to relate to
the two contracts: in substance, Plaintiff alleges that she
entered the contracts in reliance upon Defendant's fraudulent
representations. However, Plaintiff clearly alleges that
Defendant purposefully contacted her in Pennsylvania when she
falsely represented herself via emails to Plaintiff, FAC ¶ 14 &
Exs. C, D, and via phone calls to Plaintiff, id. ¶¶ 16-17. This

---

[9]     This conclusion is not inconsistent with the Mendel v.
Williams case, on which Defendant relies. See 53 A.3d 810,
824-25 (Pa. Super. Ct. 2012) (finding no personal jurisdiction
in Pennsylvania where the harm was caused in New Jersey, but
continued on in Pennsylvania).

is enough to show, apart from any minimum contacts that Defendant may have made with respect to the contracts, that she purposefully availed herself of the forum with respect to these claims and that the complained-of conduct related to such contact. See, e.g., O'Connor, 496 F.3d at 318; Grand Entm't Grp., 988 F.2d at 482; Fischbein, 2010 WL 1053220, at *4.

Third, the negligence claim for sexual exploitation (Count IV) involves conduct in multiple fora. Plaintiff alleges inappropriate touching and intimacy in Washington, D.C., id. ¶¶ 35-38 & Exs. N-1, N-2, in Ohio, id. ¶¶ 43-49, 51, and over email, id. ¶¶ 40, 99 & Ex. O. As discussed above, the targeted communication is enough to show purposeful contact related to the email claims. However, in order to exercise specific jurisdiction over the claims alleging non-forum activity, these claims must have arisen out of or related to existing minimum contacts that Defendant made with Pennsylvania.

The Third Circuit in O'Connor provided some useful principles for considering this question. There, the court considered whether a non-forum tort claim arose out of or related to the defendant's minimum contacts with the forum--specifically, those made in forming a contract. O'Connor, 496 F.3d at 316, 318. Looking to the second step of the jurisdictional analysis, the court held that sufficient "relatedness" requires more than a but-for causation inquiry.

Id. at 323. On the other hand, it found proximate causation to be too strict a standard. Id. at 320. Rather, "[t]he causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." Id. at 323 (citation omitted). On the facts before it, the court found sufficient relatedness, noting that a "meaningful link exists between a legal obligation that arose in the forum [i.e., an implied duty in the contract to exercise due care when providing services] and the substance of the plaintiffs' claims [i.e., the non-forum tort]." Id. at 324.

Applying the O'Connor standard, the sexual exploitation claim is related to the Defendant's minimum contacts with Pennsylvania. Just as in O'Connor, the retreat and coaching contracts contained an "implied promise that [Defendant] would 'exercise due care in performing the services required.'" Id. at 323 (citing Richard A. Lord, 23 Williston on Contracts § 63.25, at 525-26 (4th ed. 2002)). Clearly, taking advantage of Plaintiff sexually does not comport with exercising due care.[10] Therefore, the relatedness criterion is satisfied and

---

[10] The Ohio conduct occurred at a group retreat session and is certainly within the scope of the relevant contract. Although it is slightly less certain whether the Washington, D.C., conduct occurred within the scope of the coaching contract, Defendant admits that she held an "in-person coaching session" in Washington, D.C., on the day of the alleged conduct.

the Court finds that for the entire sexual exploitation claim
(Count IV), Plaintiff purposefully contacted the forum and the
claim arises out of or relates to that contact.

Fourth, the negligence--HIPAA claim (Count V) is
sufficiently related, under the O'Connor standard, to the
medical claims. Therefore, the Court finds that, for this claim,
Plaintiff purposefully contacted the forum and the claim arises
out of or relates to that contact.

Finally, the Court must consider the intentional tort
claims: IIED (Count VI); Assault (Count VII); and Battery (Count
VIII). On the IIED claim, Plaintiff alleges the following: (1)
that Defendant led the Ohio retreat sessions recklessly, FAC
¶¶ 19, 41-54; (2) that she recklessly ended Plaintiff's
involvement with the group, id. ¶¶ 64-66 & Exs. F, G, H, I, K,
L, M, R; and (3) that she recklessly diagnosed Plaintiff with
bipolar disorder, id. ¶¶ 25-28 & Ex. J. On the assault claim,
Plaintiff alleges offensive conduct in Ohio and Washington, D.C.
Id. ¶¶ 41-54 & Exs. N-1, N-2. On the battery claim, Plaintiff
alleges offensive conduct in Ohio. Id. ¶¶ 41-54. To the extent
that the conduct alleged in these claims occurred outside
Pennsylvania, the Court applies the same O'Connor analysis that
it did with regard to the sexual exploitation claim above. In

Def.'s Aff., Def.'s Br. Ex. 3, ¶ 18. Construing factual disputes
in Plaintiff's favor, the Court finds the Washington conduct
sufficiently related to the coaching contract.

doing so, it is apparent that the alleged conduct sufficiently relates to the forum contacts Defendant utilized in forming the two contracts. To the extent that the conduct alleged in these claims targeted Plaintiff via email while she resided in Pennsylvania, the Defendant purposefully availed herself of the forum. See, e.g., O'Connor, 496 F.3d at 318; Grand Entm't Grp., 988 F.2d at 482; Fischbein, 2010 WL 1053220, at *4. In sum, the Court finds that for these three claims, Plaintiff purposefully contacted the forum and the claims arise out of or relate to that contact.[11]

### c.   Fair Play and Substantial Justice

Having found that for the contract and tort claims, the first two steps in the specific jurisdiction analysis--that is, minimum contacts and relatedness--have been satisfied, the Court must consider whether exercising personal jurisdiction over these claims would comport with "traditional notions of

---

[11]      Defendant contends that in evaluating intentional torts, the Court must apply the "effects test" from Calder v. Jones, 465 U.S. 783 (1984), which represents a "more demanding relatedness requirement" than under the traditional minimum contacts analysis. Def.'s Br. 16 (citing Miller Yacht Sales, Inc., 384 F.3d at 99). However, the Third Circuit is clear that the effects test need only be used when another method cannot support personal jurisdiction, such as when a defendant's alleged contacts are "too small to comport with the requirements of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259-60 (3d Cir. 1988). Because the alleged intentional torts here are supported by minimum contacts, the Court need not apply the Calder "effects test."

fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Factors relevant to this analysis are the following: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." Burger King Corp., 471 U.S. at 477 (citation omitted) (internal quotation marks omitted). Notably, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id.

The most favorable factor to Defendant is the burden of defending the case in Pennsylvania. It appears that a substantial portion of her witnesses are located in Ohio. Def.'s Aff., Def.'s Reply Br. Ex. 1, ¶ 12. However, Defendant resides in Virginia. Def.'s Aff., Def.'s Br. Ex. 3, ¶ 1; given the distance between Defendant and her witnesses, it is doubtful that any other forum would offer her a lighter burden. Moreover, if Plaintiff is correct that Defendant often travels to Maine and other locations along the east coast, FAC ¶ 8, keeping the case in Pennsylvania would not seem to impose too substantial a

burden on her. The geography of this case does not present an easy way to minimize the inefficiency to the judicial system: Pennsylvania seems to be as good a central location as any. The factors in Plaintiff's favor are her interest in obtaining convenient and effective relief (since she is a Philadelphia resident, Pl.'s Decl. ¶ 1) and Pennsylvania's interest in adjudicating the dispute--given that it has a "manifest interest in providing effective means of redress" when an out-of-state defendant "reaches into the state and solicits its citizens." O'Connor, 496 F.3d at 325 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). As the Court has found, Defendant "purposefully has directed [her] activities" into Pennsylvania. Burger King Corp., 471 U.S. at 477. She must therefore "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. She has cited to her convenience in defending the case, but this does not rise to the level of "compelling." Therefore, the Court finds that Pennsylvania is a reasonable forum under the fair play and substantial justice criteria. See O'Connor, 496 F.3d at 325 ("Pennsylvania may not be the best forum--it may not even be a convenient one. But when minimum contacts exist, due process demands no more than a reasonable forum.").

. . . .

In sum, Plaintiff has alleged facts that, if true, establish that Defendant purposefully contacted Pennsylvania, Plaintiff's claims arise from or relate to these contacts, and exercising personal jurisdiction would not infringe traditional notions of fair play and substantial justice. <u>See</u> <u>id.</u> Therefore, finding that Plaintiff has established her prima facie case, the Court will exercise specific jurisdiction in this matter.

**III. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is denied. An appropriate order follows.